IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| THELONIOUS PAUL HENRY, | § | |
| TDCJ-CID NO. 1612278, | § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION H-10-2545 |
| | § | |
| CITY OF HOUSTON, *et al.*, | § | |
| Defendants. | § | |

OPINION ON DISMISSAL

Plaintiff, a state inmate proceeding *pro se*, has filed a civil rights action pursuant to 42 U.S.C. § 1983. (Docket Entry No.1). Plaintiff seeks compensatory and punitive damages from City of Houston police officers, whom he alleges used excessive and deadly force without justification.[1] He seeks the same relief from the City of Houston, the Firefighters and Police Officers' Civil Service Commission, the Houston Police Department, and Chief Harold Hurtt because as the final policymakers, they failed to train and supervise the law enforcement officers and they implemented an unconstitutional policy regarding the use of deadly force. (*Id.*).

Defendants A.A. Ferrer, Chief of Police Charles A. McClelland, Jr.,[2] and the City of Houston have filed a motion for summary judgment on the ground that plaintiff cannot show that the force was excessive or unlawful under the circumstances and he cannot recover damages because his conviction has not been invalidated. (Docket Entry No.23). Plaintiff has filed two responses to the summary judgment motion. (Docket Entries No.24, No.26). For the reasons to

---

[1] Plaintiff names as defendants Officer A. Ferrer and Officers John Doe Numbers 1 through 3. (Docket Entry No.1, pages 3-4). John Doe Numbers 1 through 3 were not served with process.

[2] Chief McClelland is the successor to Hurtt as Chief of Police for the City of Houston; therefore, he is properly substituted as a party to this case. FED. R. CIV. P. 25(d).

follow, the Court will grant defendants' motion for summary judgment and dismiss this case with prejudice.

## I. CLAIMS

Plaintiff claims that on December 24, 2005, he arrived at a dead-end street to meet a female friend. (Docket Entry No.1, page 7.). As he turned his vehicle around, plaintiff saw two to three other vehicles enter the street. (*Id.*). One vehicle parked and plaintiff's female friend exited the vehicle. The other vehicles parked further down the street. (*Id.*). Plaintiff exited his vehicle and approached his friend. (*Id.*). They talked outside her car. (*Id.*). His friend became angry and walked away; plaintiff returned to his car momentarily and then walked to the corner to find his friend. (*Id.*). After a second unsuccessful search for his friend, plaintiff saw someone in the street with a shiny object. (*Id.*). Plaintiff stopped, raised his hands, and began to back away because the shiny object appeared to be a gun. (*Id.*, page 8). As he walked back to his vehicle, he looked over his shoulder and saw flashes of light but he did not hear a gunshot. (*Id.*). He fell against his vehicle and saw that he had been shot in the leg. (*Id.*). He stood up and moved to the front of his vehicle. (*Id.*). He was shot in the buttocks. (*Id.*). Plaintiff looked up the street and saw a figure crouched on one knee pointing an infrared light on him. (*Id.*). Someone shot him several more times. (*Id.*). He fell backwards to the ground and drifted in and out of consciousness. (*Id.*). He noticed a blue car pull within feet of his body and heard police radios and people talking. (*Id.*). He was transported to Herman Hospital, where he learned weeks later that he had been shot by Houston police officers and his body had been moved to another location. (*Id.*). Plaintiff claims that he was unarmed and shot from behind five times without warning. (*Id.*, pages 7, 8).

On January 18, 2006, plaintiff was charged with aggravated assault of a public servant in cause number 105411101010 and aggravated assault with a deadly weapon of Pamela Foston in cause number 105411201010 in the 263rd Criminal District Court of Harris County, Texas. (Docket Entry No.35-1, page 3); Harris County District Clerk public website.[3] In March 2007, plaintiff filed a civil rights suit in federal court, in which he complained that City of Houston police officers used excessive force to effectuate an arrest and that Chief of Police Harold Hurtt failed to train his arresting officers concerning the use of force. *Henry v. Houston Police Department*, Civil Action No.4:07-0919 (S.D. Tex. Jan. 20, 2010). In a Memorandum and Opinion signed July 7, 2007, this Court noted that plaintiff had been charged with aggravated assault on a public servant and that a trial had been scheduled for November 2007. *Id*., page 4. Because of the pending charges, the Court ordered that plaintiff's civil rights case be stayed and administratively closed until his state court proceedings were completed. *Id.* page 7. Plaintiff was ordered to file a Motion to Reinstate, if appropriate, within thirty days from termination of the state court criminal case for aggravated assault of a public servant. *Id.* pages 7-8.

On November 17, 2009, plaintiff was convicted by a jury of aggravated assault with a deadly weapon of Pamela Foston. (Docket Entry No.35-1, page 6); Harris County District Clerk public website; TDCJ-CID website.[4] On the same day, the state district court dismissed the charge of aggravated assault of a public servant because plaintiff had been

---

[3] *See* http://www.hcdistrictclerk.com/Edocs?Public/search.aspx  (viewed October 7, 2010).

[4] *See* http://168.51.178.33/webapp/TDCJ/InmateDetails.jsp?sidnumber=03679445 (viewed July 23, 2010).

convicted of the other charge.  Harris County District Clerk website.[5]  Plaintiff filed a notice of appeal but did not challenge the aggravated assault conviction on the merits or procedural grounds; instead, he challenged the sufficiency of the evidence to establish that a prior conviction was final for purposes of imposing an enhanced sentence. *Henry v. State*, 331 S.W.3d 552 (Tex. App.—Houston [14th Dist.] 2011, no pet.).  The state intermediate appellate court affirmed the conviction but reversed the judgment assessing punishment and remanded the case for a new punishment hearing.  *Id*. at 556.  The record does not reflect a new judgment assessing punishment.

On November 25, 2009, plaintiff filed in this Court a Motion for Reinstatement, in which he stated that the charge of aggravated assault of a public servant had been dismissed on or about November 13, 2009.  *Henry v. Houston Police Department*, Civil Action No.4:07-0919 (Docket Entry No.15).  Plaintiff did not mention that he had been convicted of aggravated assault with a deadly weapon.  *Id*.  The Court granted plaintiff's Motion for Reinstatement on January 5, 2010.  *Id.*  On January 20, 2010, however, the Court dismissed the case for want of prosecution after court orders were returned to the Clerk by the postal service with the notation, "Return to Sender, released."  *Id.* at Docket Entry No.23.  Thereafter, the Court denied all of plaintiff's motions to reinstate the federal civil rights case.  *Id*. at Docket Entries No.28, No.35.  Plaintiff did not file a notice of appeal from the dismissal of this suit.

On June 7, 2010, plaintiff executed the pending complaint and filed it in this Court on July 15, 2010.  (Docket Entry No.1).  He seeks compensatory and punitive damages

---

[5] *See* http://www.hcdistrictclerk.com/edocs/public/CaseDetailsPrinting.aspx?Get=akNT0kVy7G8 (viewed January 4, 2012).

from defendants on the ground that they used excessive and unnecessary force to effectuate his arrest. (*Id.*).

## II. DISCUSSION

To be entitled to summary judgment, the pleadings and summary judgment evidence must show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). The moving party bears the burden of initially pointing out to the court the basis of the motion and identifying the portions of the record demonstrating the absence of a genuine issue for trial. *Duckett v. City of Cedar Park, Tex.*, 950 F.2d 272, 276 (5th Cir. 1992). Thereafter, "the burden shifts to the nonmoving party to show with 'significant probative evidence' that there exists a genuine issue of material fact." *Hamilton v. Seque Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (quoting *Conkling v. Turner*, 18 F.3d 1285, 1295 (5th Cir. 1994)).

### A. Excessive Force

Defendants contend that the use of deadly force against plaintiff on December 24, 2005, was justified by Texas law in effect[6] on that date and that the force was not excessive. (Docket Entry No.23, page 5). "'An officer's use of deadly force is not excessive, and thus no constitutional violation occurs, when the officer reasonably believes that the suspect poses a threat of serious harm to the officer or to others.'" *Rockwell v. Brown*, 664 F.3d 985, 991 (5th Cir. 2011) (quoting *Manis v. Lawson*, 585 F.3d 839, 843 (5th Cir. 2009)). The question is "'whether the [officer or another person] was in danger at the moment of the threat that resulted

---

[6] *See* TEX. PEN. CODE ANN. §§ 9.31, 9.32, 9.33 (Vernon 2003) (amended 2007).

5

in [officer's use of deadly force].'" *Id.* quoting *Bazan v. Hidalgo Cnty*, 246 F.3d 481, 493 (5th Cir. 2001).

Claims of excessive force during the course of an arrest are analyzed under the Fourth Amendment and its "reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 395 (1989). "As in other Fourth Amendment contexts, however, the 'reasonableness' inquiry in an excessive force claim is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id*. at 397. To establish a claim of excessive force under the Fourth Amendment, a plaintiff must demonstrate that he has been seized and that he sustained an injury, which resulted directly and only from a use of force that was clearly excessive to the need, and the force used was objectively unreasonable. *Flores v. City of Palacios*, 381 F.3d 391, 396 (5th Cir. 2004).

In gauging the objective reasonableness of the force used by a law enforcement officer, the Court must balance the amount of force used against the need for that force. *Ikerd v. Blair*, 101 F.3d 430, 434 (5th Cir. 1996). At issue, "is whether the officer's actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham,* 490 U.S. at 397. In applying this standard, courts are also directed to consider "the fact that police officers are often forced to make split second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id*. at 396-97. Thus, in analyzing an excessive claim, courts are directed to "[pay] careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an

immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396. The courts, therefore, must judge "reasonableness" from the "perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id*.

Defendants' summary judgment proof shows the following: On the day of the shooting, Glenn Foston, the ex-spouse of the complainant in the underlying assault with a deadly weapon conviction, attested in a sworn statement that he overheard complainant and plaintiff arguing outside his doorway. (Docket Entry No.23-5). Foston heard plaintiff say to complainant that he knew that Foston had called the police and that if the police arrived before he and complainant left, he would kill complainant and himself because he did not want to return to prison. (*Id.*). Foston further attested that he heard two gunshots and after a brief pause, someone yell, "drop the weapon." (*Id.*). He heard several more shots but did not see who fired the shots. (*Id.*). He called 9-1-1 again and was informed by a dispatcher that the police were on the scene. (*Id.*). When two ambulances arrived, he learned that complainant and plaintiff had been shot. (*Id.*).

Witness statements executed by the arresting officers on the date of the incident reflect that the Officers A.A. Ferrer and R.D. Gonzales were dispatched to the scene and notified that the suspect was possibly armed with a firearm. (Docket Entries No.23-3, No.23-4). Once at the scene, the officers observed a female sitting on the ground and plaintiff punching her on the head. The officers ordered plaintiff to stop hitting her. They saw plaintiff remove a pistol from his waist area and fire it toward the female's head several times. Officer Ferrer attested that he feared for the female's life and fired his weapon several times at plaintiff. (Docket Entry No.23-

3, page 1). His partner fired one round. (Docket Entry No.23-4, page 2). By both officers' account, plaintiff then turned and pointed the gun in Ferrer's direction. (Docket Entries No.23-3, page 1, No.23-4, page 2). Ferrer stated that he feared for his life and fired his weapon several times at plaintiff. (Docket Entry No.23-3, page 1). As the officers approached, plaintiff ran between parked vehicles on the driveway; he then turned toward Ferrer and raised his weapon at Ferrer. (Docket Entries No.23-3, page 2; No.23-4, page 2). Ferrer fired at plaintiff and plaintiff fell to the ground on one knee. (*Id.*). Plaintiff turned again toward Ferrer with his weapon. (*Id.*). Ferrer fired his weapon again several times and plaintiff turned away and lunged forward on his stomach. (*Id.*). The officers secured plaintiff and the scene. (*Id.*). They recovered the weapon that was lying on the ground. (Docket Entry No.23-3, page 2; No.23-4, page 2). Officer Gonzalez notified dispatch that they had two gunshot victims and checked on the female who had been shot. (Docket Entry No.23-4, page 2). Other units arrived and these officers helped to secure the scene. (*Id.*). Plaintiff and complainant were transported by ambulances to the hospital. (Docket Entry No.23-3, page 2; No.23-4, pages 2-3).

An internal affairs investigation regarding the discharge of a firearm by the officers classified the incident as intentional and justified. (Docket Entries No.23-6, No.23-7). After an investigation, a Harris County grand jury returned a No Bill with respect to the actions of Officers Ferrer and Gonzales. (Docket Entry No.23-8).

Plaintiff makes no attempt to controvert defendants' summary judgment proof. He does not explain in any of his pleadings how complainant was shot or how he was convicted of the deadly weapon offense without brandishing a gun. Nor does he dispute Foston's declarations that the incident occurred in front of Foston's house and not a deserted dead-end

street, that Foston heard plaintiff threaten to kill complainant, that Foston called the emergency number for police assistance and was informed that police were on the scene, or that Foston learned that both he and complainant had been shot. Nor does plaintiff dispute the officers' official reports, in which they stated that they saw plaintiff shoot complainant and ordered him to drop the weapon and that he pointed and shot his gun at one officer. Instead, plaintiff declares that his hands were raised in plain view and that he was not moving and not threatening.[7] (Docket Entry No.26).

The record shows that under the circumstances that gave rise to plaintiff's conviction for aggravated assault with a deadly weapon, an officer could reasonably believe that plaintiff was armed with a gun and that he posed a threat of serious harm to complainant and to the officers. Under such circumstances, the officers would be justified in using deadly force under Texas law to defend complainant and themselves.[8] In light of these facts and circumstances, the officers' actions were objectively reasonable under the Fourth Amendment.

Defendants also maintain that plaintiff cannot recover damages on his excessive force claim because a judgment in favor of plaintiff would necessarily imply the invalidity of his criminal conviction for aggravated assault under Texas law. (Docket Entry No.23, page 7). In *Heck v. Humphrey*, the Supreme Court held that a civil tort action, including an action under 42 U.S.C. § 1983, is "not [an] appropriate vehicle[ ] for challenging the validity of outstanding

---

[7] Plaintiff also complains that defendants did not provide him with medical records or the video recording of the police dash camera, which he claims would settle the dispute as to whether he brandished a weapon. (Docket Entry No.24-1, page 3). Plaintiff fails to explain, however, how a police dash camera could have recorded the incident if, as he originally alleged, the officers ambushed him on a dead-end street at night and the police vehicles that followed his female friend to the dead-end street "parked further away [from where his friend parked] and on the opposite side of the street." (Docket Entry No.1, page 7). He further fails to explain how his medical records would show whether he brandished a gun or whether the officers' use of deadly force was excessive or unnecessary.

[8] *See* TEX. PEN. CODE ANN. §§ 9.31, 9.32, 9.33 (Vernon 2003) (amended 2007).

criminal judgments." 512 U.S. 477, 486 (1994). "It is well settled under *Heck* that a plaintiff who has been convicted of a crime cannot recover damages for an alleged violation of his constitutional rights if that "violation arose from the same facts attendant to the charge for which he was convicted, unless he proves 'that his conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.'" *Bush v. Strain*, 513 F.3d 492, 497 (5th Cir. 2008) (quoting *Ballard v. Burton*, 444 F.3d 391, 396 (5th Cir. 2006) (quoting *Heck*, 512 U.S. at 486-87)). Although plaintiff's case was remanded for a new sentencing hearing, his conviction has not been reversed or declared invalid.

Plaintiff claims that he was ambushed by police officers who followed complainant to a deserted dead-end street; there, the officers shot the unarmed plaintiff in the back after complainant left the scene. (Docket Entry No.1). In other words, plaintiff alleges that he did nothing wrong; he does not allege that his claim of excessive force is separable from his aggravated assault on complainant.

Plaintiff was charged, however, with causing bodily injury to Foston by using a deadly weapon, *i.e.*, a firearm. (Docket Entry No.35-1, page 3). His conviction for aggravated assault with a deadly weapon necessarily includes an element that plaintiff used the type of force against complainant that would justify the officers' use of deadly force against plaintiff to protect complainant under state law in effect at the time.[9] He proffers no alternative pleading or theory

---

[9] State law in effect at the time of the incident provides the following, in pertinent part:

> A person is justified in using force or deadly force against another to protect a third person if:
>
> (1) under the circumstances as the actor reasonably believes them to be, the actor would be justified under section 9.31 or 9.32 in using force or deadly force to protect himself

of recovery that would allow his claim of excessive force to proceed without interfering with his criminal conviction for the aggravated assault of complainant Foston with a deadly weapon. If he prevailed on the instant claim, plaintiff will have established that his criminal conviction lacks any basis. A finding in favor of plaintiff on the officers' use of force would necessarily invalidate his conviction for aggravated assault with a deadly weapon. Accordingly, plaintiff's excessive force claim is barred by *Heck*. *Cf. DeLeon v. City of Corpus Christi*, 488 F.3d 649 (5th Cir. 2007); *Arnold v. Town of Slaughter*, 100 Fed. App'x 321, 324-25 (5th Cir. 2004).

### 2. Municipal Liability

Plaintiff's claims against the City of Houston, the City of Houston Police Department and its Police Chief, and the Firefighters' and Police Officers' Civil Service Commission of the City of Houston are conclusory and legally frivolous. (Docket Entry No.1).

To succeed on a claim against the City of Houston and its Police Chief, plaintiff must show an underlying constitutional violation resulting from an official policy. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Plaintiff fails to show an underlying constitutional violation and an official policy giving rise to such violation, therefore, he fails to meet his burden under the *Monell* standard.

The City of Houston Police Department is a department within the City of Houston and does not qualify as an independent entity with capacity to sue or be sued. *Maxwell*

---

against the unlawful force or unlawful deadly force he reasonably believes to be threatening the third person he seeks to protect; and

(2) the actor reasonably believes that his intervention is immediately necessary to protect the third person.

TEX. PEN. CODE ANN. §9.33 (Vernon 2003) (amended 2007) (Docket Entry No.23-2, page 3). Section 9.31 provides for use of force in self-defense; section 9.32 provides for the use of deadly force in defense of person. *Id.* §§ 9.31, 9.32.

*v. Henry*, 815 F.Supp. 213, 215 (S.D. Tex. 1993). Therefore, plaintiff cannot assert a cause of action against the City of Houston Police Department.

Finally, plaintiff states no facts that would give to a claim against the Firefighters' and Police Officers' Civil Service Commission of the City of Houston.

Accordingly, plaintiff's claims against the City of Houston, the City of Houston Police Department and its Police Chief, and the Firefighters' and Police Officers' Civil Service Commission of the City of Houston are subject to dismissal.

### III. CONCLUSION

Based on the foregoing, the Court ORDERS the following:

1. Defendants' motion for summary judgment (Docket Entry No.23) is GRANTED.

2. Plaintiff's complaint (Docket Entry No.1) is DISMISSED, with prejudice. All claims against all defendants are DISMISSED with prejudice.

3. All other pending motions are DENIED.

The Clerk will provide a copy of this order to the parties and a copy by facsimile transmission, regular mail, or e-mail to the TDCJ - Office of the General Counsel, Capitol Station, P.O. Box 13084, Austin, Texas, 78711, Fax: 512-936-2159.

SIGNED at Houston, Texas, this 19th day of March, 2012.

                                          MELINDA HARMON
                                    UNITED STATES DISTRICT JUDGE